IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 8:07CR315** |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| **RODNEY JOHNSON,** | ) | |
| | ) | |
| Defendant. | ) | |

    This matter is before the Court on the Report and Recommendation (Filing No. 45) issued by Magistrate Judge F.A. Gossett recommending denial of the motion to suppress filed by the Defendant, Rodney Johnson (Filing No. 23). Johnson filed a statement of objections to the Report and Recommendation and a supporting brief (Filing Nos. 48, 49) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a).

    Johnson is charged in a two-count Indictment with: conspiracy to distribute and possess with intent to distribute one kilogram or more of a mixture or substance containing phencyclidine ("PCP") (Count I); and possession with intent to distribute one kilogram or more of PCP (Count II). Johnson seeks an order suppressing statements and evidence obtained as a result of his August 23, 2007, encounter with law enforcement and arrest.

    Following an evidentiary hearing, Judge Gossett issued a Report and Recommendation in which he concluded: the initial contact with Johnson at the bus station was consensual; reasonable suspicion supported Johnson's investigative detention; probable cause supported issuance of the search warrant for Johnson's suitcase, and alternatively, the good faith exception of *United States v. Leon,* 468 U.S. 897 (1984), applies; from the time Johnson awoke and began speaking about the delivery to Chicago until waived his *Miranda* rights, Johnson's custodial *pre-Miranda* statements must be

suppressed; Johnson's post-*Miranda* statements were knowing and voluntary and admissible; and the failure initially to read Johnson his *Miranda* rights does not require the suppression of physical evidence.

On the basis of these determinations, Judge Gossett recommended that Johnson's motion to suppress be granted in part with respect to his pre-Miranda statements and otherwise denied.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a), the Court shall make a de novo determination of those portions of the report, findings, and recommendations to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## STATEMENT OF FACTS

The Magistrate Judge provided a very detailed account of the events surrounding the traffic stop, search, and arrest. The Court has considered the transcripts of the hearing conducted by the Magistrate Judge (Filing Nos. 34, 44). The Court also carefully viewed the evidence (Filing No. 41). There are no objections to the findings of fact. Based on the Court's de novo review of the evidence and arguments, the Court adopts Judge 's factual findings in their entirety.

## FACTUAL BACKGROUND

Briefly, Johnson was approached at the Greyhound bus station and eventually handcuffed for officer safety purposes and detained temporarily until a canine sniff of his suitcase was performed. Once the canine alerted, Johnson was transported to the police

station, where he was handcuffed to furniture while officers obtained a search warrant for his suitcase. The warrant was obtained, and PCP was found when the suitcase was searched. Johnson initiated conversation with Investigator Scott, who then asked followup questions, eliciting incriminating responses. Officers eventually determined that Johnson had not been read his *Miranda* rights, which were then administered. Johnson waived his rights and gave a post-*Miranda* statement.

## ANALYSIS

The Defendant objects to the following portions of Judge Gossett's Report and Recommendation:

- page 25 - the conclusion that reasonable suspicion existed to detain Johnson for further investigation at the bus station when Johnson was handcuffed and a canine sniff was performed on his suitcase;

- page 32 - the conclusion that admissibility of Johnson's Mirandized statements is governed by *Oregon v. Elstad,* 407 U.S. 298 (1985), rather than by *Missouri v. Seibert,* 542 U.S. 600 (2004), because officers did not deliberately circumvent *Miranda* requirements; and

- the conclusion that Johnson's statements were voluntary.[1]

(Filing No. 40.)

### *Reasonable Suspicion*

---

[1] Additional objections were listed in the Defendant's statement of objections. (Filing No. 48.) However, because no bases were provided for these additional objections either in the statement of objections or the brief, they are deemed abandoned. NECrimR 57.3(a) (requiring a statement of the objection and a basis).

3

Johnson argues that officers lacked reasonable suspicion to detain him at the bus station, arguing that the following factors, singly or in combination, were innocuous: travel from California to Chicago; purchase of his bus ticket with cash on the day of travel; the suitcase was new, had an after-market lock, bore a computer-generated tag, and smelled of Vicks Vaporub; and Johnson's nervousness.

A reasonable suspicion that an individual is involved in criminal activity must be based on "'particularized, objective facts which, taken together with rational inferences from those facts, reasonably [warrant] suspicion that a crime [is] being committed.'" *United States v. Beck,* 140 F.3d 1129, 1136 (8th Cir. 1998) (quoting *United States v. Martin,* 706 F.2d 263, 265 (8th Cir. 1983)). A court must view the totality of the circumstances in determining whether reasonable suspicion exists. *United States v. Jones,* 269 F.3d 919, 927 (8th Cir. 2001). The court may also "consider any added meaning that certain conduct might suggest to experienced officers in the field, trained in the observation of criminal activity." *Id.* Reasonable suspicion may not be based on a "mere hunch" or circumstances that describe a "'large category of presumably innocent travelers.'" *Id.* (quoting *Reid v. Georgia,* 448 U.S. 438, 441 (1980)). However, facts indicating innocent travel can, when viewed together, rise to a level indicating reasonable suspicion. *Beck,* 140 F.3d at 1137 (citing *United States v. Sokolow,* 490 U.S. 1, 10 (1989)). The Eighth Circuit has cautioned that travel from the State of California, or even source cities, must be considered lightly, since millions of law-abiding travelers starts their trips from destinations considered as sources for illegal narcotics. *Id.* at 1137-38 & nn.2 & 3.

Applying these principles in the instant case, Investigators Scott and Sattlefield were independently interested in Johnson at the Omaha, Nebraska, Greyhound bus station

4

because Johnson was the only person who got off the bus and remained outside pacing and circling the bus. He seemed to be interested in the undercarriage area of the bus where luggage was stored. (Filing No. 34 ("Tr. 1"), at 71-72; Filing No. 44 ("Tr. 2), at 132-33.) Investigators Scott and Sattlefield testified that the area near the buses is closed to passengers while buses are being serviced and luggage is being unloaded. The officers stated that once off a bus most riders are more interested in other matters such as vending machines, smoking, or using the telephone. (Tr. 1, at 73; Tr. 2, at 133.) Investigator Sattlefield took an interest in a bag that he had seen with Johnson, a new red bag with: an aftermarket lock; a tag indicating transport from a source city to a destination city; a non-unique name "Robert Johnson";[2] and an odor of Vicks Vaporub. Investigator Scott also noted that the bag was unique, meaning that it was not part of a set of bags. (Tr. 1, at 74-75; Tr. 2, at 134.) With this information, Investigator Sattlefield began a consensual encounter with Johnson. (Tr. 1, at 83.) During the encounter, Investigator Scott noted additional information, including: Johnson's extreme nervousness; and Johnson's statements that he did not have a key to the lock on the bag and he did not own the contents of the bag. (*Id.*, at 84-87.) At that point, Johnson was handcuffed for officer safety while still outside at the bus terminal. (*Id.*, at 87.) While Johnson was being handcuffed, he was disclaiming ownership of and knowledge of the contents in the bag, and his demeanor was described as "extremely nervous, borderline passing out. His knees [were] shaking terribly. His breathing [was] heavy. . . . his hands [were] shaking. He was

---

[2]Once Johnson was approached, his driver's license reflected his name, Rodney Johnson. (Tr. 2, at 141.)

5

just a wreck." (*Id.*, at 88.)  Johnson's level of nervousness ranked in the top ten percent of the people that Investigator Scott had handcuffed.[3] (*Id.*)

Johnson argued specifically: Investigator Scott had no rational explanation for the significance of the newness of the suitcase or the aftermarket lock; the scent of Vicks Vaporub was only noticeable upon close proximity to the bag; and computer-generated baggage tags are routine.  These arguments are misplaced.  Investigators Scott and Investigator Sattlefield both testified that through their experience, a new bag can be significant because sometimes bags are bought specifically to transport illegal drugs just prior to the trip.  (Tr. 1, at 76; Tr. 2, at 134.)  Investigators Scott and Investigator Sattlefield also testified what they mean by an "aftermarket lock" and to its significance.  (Tr. 1, at 76; Tr. 2, at 134.)  Investigator Scott stated that he smelled the Vicks when he put his nose up to the zipper of the bag.  (Tr. 1, at 78-79.)  Investigator Sattlefield that when he got "close" to the bag he noted a strong odor consistent with a masking agent.  (Tr. 2, at 134-35.)  Finally, neither Investigator Scott nor Investigator Sattlefield attributed particular significance to the computerized nature of the Greyhound-generated tag.  (Tr. 1, at 77-78; Tr. 2, at 136-37.)  However, Investigator Sattlefield testified that the bag was unusual because: the bag lacked a handwritten tag with an address or other contact information generally included on luggage to make contact easier in case of loss; and the existing Greyhound tag only bore a name, Robert Johnson.  (Tr. 2, at 136-37.)  Investigator Sattlefield testified that the combination of the factors he observed raised his level of suspicion.  (*Id.* at 137.)   In summary, the evidence in this case suggests that the

---

[3]Johnson's nervousness appears to be of the extreme type that supports a finding of reasonable suspicion.  *Jones,* 269 F.3d at 929 (citing *United States v. Lebrun,* 261 F3d 731, 733 (8th Cir. 2001)).

6

numerous factors testified to by Investigators Scott and Sattlefield, viewed in combination, very adequately support Judge Gossett's conclusion that officers had a reasonable suspicion to detain Johnson temporarily at the bus terminal pending a canine search of his suitcase. The objection is denied.

### Standard of Admissibility of Post-Miranda Statement

Johnson argues that both his pre- and post-*Miranda* statements should be suppressed. He argues that analysis of the admission of his post-*Miranda* statement is appropriate under *Missouri v. Seibert,* 542 U.S. 600 (2004) rather than *Oregon v. Elstad,* 470 U.S. 298 (1985). In the brief supporting the statement of objections, Johnson bases his argument on the alleged similarity between events in Johnson's case and a police practice described in *Seibert*. The objectionable police practice described in *Seibert* is a calculated strategy of interrogating to the point of gaining a confession, then giving *Miranda* warnings, and finally a second interrogation during which the suspect is led to repeat the initial confession. *Seibert,* 542 U.S. at 606, 609. This practice was promoted within the department of the officer who testified to the practice in *Seibert*, in other departments in which he had worked, and by a national police training organization. *Id.* at 609. The majority listed a set of factors useful In determining whether *Miranda* warnings administered between two rounds of interrogation are valid:

> the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first.

*United States v. Ollie,* 442 F.3d 1135, 1141 (8th Cir. 2006) (quoting *Seibert,* 542 U.S. at 615). However, the Eighth Circuit noted that the *Seibert* Court was sharply divided and

found Justice Kennedy's concurrence in *Seibert* to have "'special significance.'" *Id.* at 1142 (quoting *United States v. Briones,* 390 F.3d 610, 613 (8th Cir. 2004)). Justice Kennedy "would suppress post-warning statements only where the police intentionally used the two-step interrogation technique to render *Miranda* warnings ineffective. Such statements would be inadmissible unless the police took curative measures that would ensure that a reasonable person would understand his or her rights." *Id.* (citing *Seibert,* 542 U.S. at 621-22). Otherwise, Justice Kennedy would use the *Oregon v. Elstad*, 470 U.S. 298 (1985) analysis. *Briones,* 390 F.3d at 613-14 (citing *Seibert,* 542 U.S. at 309).

      Turning to the evidence in Johnson's case, Investigator Alan Eberle, whose primary role in the investigation was that of the canine handler, testified that he asked Johnson questions not knowing whether his *Miranda* warnings had been administered. Investigator Eberle knew that Johnson was in custody yet did not think that warnings were needed, and he eventually asked Johnson questions to determine whether a controlled delivery might be arranged. (Tr. 1, at 62.) Investigator Scott testified that his role when he entered the room in which Johnson was being detained at the police station was that of a "babysitter." He was not the case officer and did not intend to question Johnson. He assumed that *Miranda* warnings had been given because several officers had already seen Johnson and the paperwork on the table in the room was consistent with an interview in progress. Moreover, because Johnson initiated discussion with Investigator Scott, he thought that Johnson had been given his warnings. (Tr. 2, at 115-16.) Nevertheless, Investigator Scott testified to several questions that he asked Johnson, and those questions clearly were of the type that would normally require *Miranda* warnings. (*Id.*, at 117-21.) Investigator Sattlefield testified that after the PCP was found officers asked Johnson questions, and

Johnson was talkative. At some point during the questioning Investigator Sattlefield realized that perhaps Johnson had not yet been read his *Miranda* rights. He thought that perhaps the factor that triggered the question of *Miranda* warnings in his mind was the absence of a *Miranda* rights form with the other paperwork on the table. (*Id.*, at 157-58.) Investigator Sattlefield then advised Johnson of his rights. (*Id.*, at 158.) Videotapes corroborate the officers' testimony. The videotape depicts Johnson initiating conversation, followup incriminating questions, discussion among the officers as to whether Johnson had been read his rights, the rights advisory, and a more thorough questioning. (Exs. 1, 2.)

Following Justice Kennedy's analysis, the record includes no evidence that the failure initially to advise Johnson of his rights was a calculated effort to obtain his confession. The government has met its burden of showing by a preponderance of the evidence that the failure to provide warnings at the onset of the questioning was not deliberate. Therefore, *Elstad* controls, and the inquiry becomes whether Johnson's post-*Miranda* statement was knowing and voluntary.[4]  *Elstad,* 470 U.S. at 309. Therefore, the objection is denied.

***Voluntariness***

Johnson argues that his post-*Miranda* statement was involuntarily made. Voluntariness is determined by examining whether a statement was obtained by using threats, violence, express or implied promises sufficient to overbear the suspect's will. *United States v. Garlewicz,* 493 F.3d 933, 935 (8th Cir. 2007).

---

[4] The voluntariness of Johnson's statement is discussed below. As shown through the testimony, on the videotape, and in the written waiver of Johnson's rights, his statement was knowing. Whether the statement was knowing has not been raised as an issue.

9

Although Johnson was handcuffed to a chair and later a table with police presence, numerous other factors testified to and captured on videotape support the conclusion that Johnson voluntarily gave his statement.  He was offered a drink and other amenities several times, was given a blanket, and allowed to sleep.  He did not appear uncomfortable.  He initiated conversation with officers.  There were no threats or promises, and violence was not used.  The totality of the circumstances shows that Johnson's post-*Miranda* statement was voluntarily made.  The objection is denied.

## CONCLUSION

For the reasons discussed, the Magistrate Judge's Report and Recommendation is adopted in its entirety, and the Defendant's motion to suppress is granted in part and denied in part.

IT IS ORDERED:

1. The Magistrate Judge's Report and Recommendation (Filing No. 45) is adopted in its entirety;

2. The Statement of Objections to the Report and Recommendation (Filing No. 48) is denied; and

3. The Defendant's Motion to Suppress (Filing No. 23) is granted in part and denied in part as follows:

    a. Johnson's pre-*Miranda* statements are suppressed; and

    b. otherwise, the motion is denied.

DATED this 24th day of March, 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge